IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

                                                             OPINION AND ORDER

                Plaintiff,

                                                              13-cv-334-bbc

     v.

HO-CHUNK NATION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      The state of Wisconsin has brought this case to enjoin defendant Ho-Chunk Nation from offering electronic poker at Ho-Chunk Gaming Madison (formerly DeJope), the Ho-Chunk Nation's gaming facility in Madison, Wisconsin. The question raised in the parties' cross motions for summary judgment is whether Ho-Chunk Nation's poker game violates a compact with the state. The answer to that question turns on whether electronic poker qualifies as a "class II" or "class III" game under the Indian Gaming Regulatory Act. Class III games are prohibited by the compact except under certain conditions not present in this case, but class II games are permitted. Because I conclude that Ho-Chunk Nation's electronic poker game is a class III game, I am granting the state's motion for summary judgment and denying Ho-Chunk Nation's motion.

      The following facts are taken from the stipulation submitted by the parties. Dkt. #17.

1

UNDISPUTED FACTS

Defendant Ho-Chunk Nation owns a gaming facility in Madison, Wisconsin, called Ho-Chunk Gaming Madison. Games that are classified as "class II" under the Indian Gaming Regulatory Act are permitted at the facility but "class III" games are not permitted.

In 1992, the state and Ho-Chunk Nation entered into a gaming compact. In 2003, the parties executed an amendment to the compact that authorized Ho-Chunk Nation to offer poker at its class III gaming facilities (which do not include Madison). In addition, the compact permitted Ho-Chunk Nation to offer class III gaming at the Madison facility if a referendum authorizing Ho-Chunk Nation to do so was passed by voters in Dane County in 2004. Although the referendum was held, it did not succeed. Approximately 94,000 people voted against allowing class III gaming; approximately 52,000 voted for it. Since that time, neither the state nor Ho-Chunk Nation has taken any action to approve or authorize class III gaming at the Madison facility.

In November 2010, Ho-Chunk Nation began offering a "non-banked" electronic poker game called PokerPro at the Madison facility. In non-banked card games, the house has no monetary stake in the game itself, the house does not place bets and the players play and bet against one another. Playing PokerPro is virtually identical to playing poker on a traditional table, except the cards and chips are maintained in an electronic medium and there is no live, human dealer.

OPINION

The Indian Gaming Regulatory Act divides gaming into three categories. "Class I gaming" includes "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations." 25 U.S.C. § 2703(6). "Class II" gaming includes certain kinds of bingo as well as "card games" that are (1) "explicitly authorized by the laws of the State" or (2) "not explicitly prohibited by the laws of the State and are played at any location in the State." 25 U.S.C. § 2703(7). "Class III" gaming encompasses all forms of gaming that do not qualify as "class I" or "class II" gaming. 25 U.S.C. § 2703(8). "Class III" games must be authorized by a compact between a state and a tribe. 25 U.S.C. § 2710(d)(1)(C).

The state makes a straightforward argument in support of its view that Ho-Chunk Nation's electronic poker game at the Madison facility is a "class III" card game. (The parties do not dispute that the electronic poker at issue in this case qualifies as a "card game" within the meaning of § 2703(7).) In particular, the state cites art. IV, § 24 of the Wisconsin Constitution, which states that the "legislature may not authorize gambling in any form" except for the games listed in the amendment. Because poker is not one of the listed exceptions, the state says that poker is prohibited under state law, so it cannot meet either definition of card games that qualify as class II gaming under § 2703(7).

Ho-Chunk Nation argues that its electronic poker game is a "class II" game, but it arrives at that conclusion through a more circuitous route. In fact, in its opening brief, Ho-Chunk Nation all but ignores § 2703(7) and focuses instead on a number of other issues

3

with little explanation of how those issues are relevant to the legal questions before the court. However, from a review of both of its briefs, I understand Ho-Chunk Nation to be making the following arguments:

- First, Ho-Chunk Nation says that the meaning of "explicitly authorized" and "not explicitly prohibited" in § 2703(7)(A)(ii) must be read "in conjunction with" 25 U.S.C. § 2710(b)(1), which permits a tribe to engage in class II gaming if it "is located within a State that permits such gaming for any purpose by any person, organization or entity (and such gaming is not otherwise specifically prohibited on Indian lands by Federal law)."

- Second, Ho-Chunk Nation says that, read together, § 2703 and § 2710, along with relevant legislative history, require courts to apply the standard from California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987), to determine whether a particular game qualifies under class II. In particular, Cabazon stands for the proposition that a tribe may engage in gaming if the state's "general policy towards gambling is regulatory or prohibitory." Dft.'s Resp. Br., dkt. #33, at 8.

- Third, Ho-Chunk Nation says that, because Wisconsin does not prohibit *all* gaming, it follows that the state takes a "regulatory" approach, which means that it cannot prohibit poker either. Alternatively, Ho-Chunk Nation must be allowed to offer electronic poker because Wisconsin allows poker in other contexts and does not enforce its laws that restrict poker.

- Finally, Ho-Chunk Nation says that the Wisconsin Constitution does not "explicitly prohibit" the poker at its Madison gaming facility.

Having reviewed both parties' briefs and the legal authorities they cite, I am persuaded that the state has the better argument. In law, as in many things, the simplest answer is often the best one.

A. Effect of § 2710 on § 2703

Ho-Chunk Nation's argument regarding the proper interpretation of § 2703(7)(A)(ii)

4

is simply untenable. Ho-Chunk Nation says that § 2703(7)(A)(ii) must be read "in conjunction with" 25 U.S.C. § 2710(b)(1), but the statutes serve a different purpose. Section 2703(7)(A)(ii) *defines* class II gaming; section 2710(b)(1) imposes an *additional condition* on class II gaming. In other words, it must be determined first whether a particular game meets the definition for a class II game under § 2703(7)(A)(ii). If the game meets that definition, then the game must meet the requirements in § 2710(b)(1) before it can be offered by the tribe. On its face, § 2710(b)(1) does not purport to expand or contract the meaning of a class II game under § 2703(7)(A)(ii).

Distilled, Ho-Chunk Nation's argument is not that the two statutes should be read "in conjunction" with each other, but that § 2710(b)(1) should *supplant* § 2703(7)(A)(ii). In other words, Ho-Chunk Nation's position is that the questions whether a game is "explicitly authorized by the laws of the State" or "not explicitly prohibited by the laws of the State" in § 2703(7)(A)(ii) should be the same as the question whether the state "permits such gaming for any purpose" in § 2710(b)(1). However, if that were the case, § 2703(7)(A)(ii) would serve no purpose and would be read out of the United States Code. Ho-Chunk Nation's "reading is thus at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (alterations and internal quotations omitted). Why would Congress provide an express definition of a term if it believed it already had defined the term in another provision? Ho-Chunk Nation does not answer that question. Particularly because §

5

2710(b)(1) does not purport to be a definition, I see no reason to conflate the two provisions.

In support of its interpretation, Ho-Chunk Nation cites a Senate committee report for the Indian Gaming Regulatory Act. Dft.'s Br., dkt. #26, at 19-20. This report includes the same language Ho-Chunk Nation has been using, which is that § 2703(7)(A)(ii) and § 2710(b)(1) should be read "in conjunction" with each other. The meaning of the phrase "in conjunction" in this context is not clear, but even if I assume that it means what Ho-Chunk Nation says it does, that piece of legislative history would not be enough to overcome the plain language of the statute.

Ho-Chunk Nation cites Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 10 (1976), for the proposition that, "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination." However, since Train, both the Supreme Court and the Court of Appeals for the Seventh Circuit have stated repeatedly that a federal court has no discretion to rely on other indicia of legislative intent when the language of a statute is unambiguous. Boyle v. United States, 556 U.S. 938, 950 (2009) ("Because the statutory language is clear, there is no need to reach petitioner's remaining arguments based on statutory purpose, legislative history, or the rule of lenity."); Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."); Holder v. Hall, 512 U.S. 874, 932 n.28

(1994) ("Resort to legislative history is only justified where the face of the [statute] is inescapably ambiguous."); Patriotic Veterans, Inc. v. Indiana, 736 F.3d 1041, 1046-47 (7th Cir. 2013) ("The preeminent canon of statutory interpretation requires that courts presume that the legislature says in a statute what it means and means in a statute what it says there. If Congress determines later that the plain language of the statute does not accurately reflect the true intent of Congress, it is for Congress to amend the statute.") (internal quotations, citations and alterations omitted); Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 802 (7th Cir. 2010) ("We need not explore [the statute's] legislative history in view of the unambiguous terms of the statute."); United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993) ("[W]hen the language of a statute is clear and unambiguous, no need exists for the court to examine the legislative history, and the court must give effect to the plain meaning of the statute."). See also American Hospital Association v. NLRB, 499 U.S. 606 (1991) (affirming federal agency's interpretation of statute even though it was inconsistent with committee report).

Even if I assume that Train has not been implicitly overruled by later cases, that case is not controlling. First, the Court did not hold that the statute was unambiguous in that case, so the statement Ho-Chunk Nation cites is dicta. Second, the legislative history at issue in Train was not simply a committee report. Rather, the Court relied on the entire history of the law, including proposed amendments, multiple reports and a number of different statements by legislators. Train, 426 U.S. at 11-23. Finally, the Court stated that the lower court's interpretation was not just inconsistent with legislative history but also

7

"would have marked a significant alteration of the pervasive regulatory scheme embodied in the" statute at issue. Id. at 23-24. None of these things apply in this case.

Ho-Chunk Nation cites a number of cases in which a court cited with approval the same committee report on which it is relying, but in none of these cases did the court rely on the report as justification for ignoring unambiguous statutory text. United States v. 103 Electric Gambling Devices, 223 F.3d 1091, 1099-1100 (9th Cir. 2000) (relying on report to determine "[t]he distinction under IGRA between an electronic 'aid' and an electronic 'facsimile'"); Mashantucket Pequot Tribe v. State of Connecticut, 913 F.2d 1024, 1029 (2d Cir. 1990) (relying on report to aid in interpreting § 2710; court did not consider meaning of "class II gaming" under § 2703); United States v. Sisseton-Wahpeton Sioux Tribe, 897 F.2d 358, 359 (8th Cir. 1990) (relying on report to determine the meaning of phrase "nature and scope" in § 2703(7)(C)); Crosby Lodge, Inc. v. National Indian Gaming Commission, 803 F. Supp. 2d 1198, 1205 (D. Nev. 2011) (relying on report to determine role of National Indian Gaming Commission); Shakopee Mdewakanton Sioux Community v. Hope, 798 F. Supp. 1399, 1407 (D. Minn. 1992), aff'd, 16 F.3d 261 (8th Cir. 1994) (relying on report to distinguish bingo from "high-stakes casino gambling" that must be classified as a class III game). Accordingly, none of these cases are instructive.

### B. "Regulatory" versus "Prohibitory" Treatment of Gaming

The Nation cites California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987), as providing the standard for determining whether a type of gaming is a class II

game. In particular, it says that the distinction in Cabazon between a "prohibitory" and "regulatory" approach to gaming should apply and that its electronic poker must be permitted under the standard in Cabazon because Wisconsin takes a "regulatory" approach to gaming.

This argument is misguided. Cabazon had nothing to do § 2703 or the meaning of "class II gaming." Rather, the question in Cabazon was whether a particular federal statute not at issue in this case gave the California government authority to prohibit certain kinds of gaming conducted by tribes. When the Court concluded that the statute did not give the state such authority, Congress enacted the Indian Gaming Regulatory Act to address the vacuum. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996) ("[T]he [Indian Gaming Regulatory] Act grants the States a power that they would not otherwise have, viz., some measure of authority over gaming on Indian lands."). See also Michigan v. Bay Mills Indian Community, No. 12-515, — U.S. —, 2014 WL 2178337 (U.S. May 27, 2014) ("[T]he problem Congress set out to address in IGRA (Cabazon's ouster of state authority) arose in Indian lands alone. And the solution Congress devised, naturally enough, reflected that fact."); Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States, 367 F.3d 650, 654-55 (7th Cir. 2004) ("Following the Supreme Court's decision in California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987), which held that Congress had not yet expressly granted the States jurisdiction to enforce state civil gaming regulations on Indian reservation land, Congress passed IGRA for the purpose of creating a federal regulatory scheme for the operation of gaming on Indian lands."). Because

the Act created new state authority over tribal gaming, it makes little sense to interpret the Act using a standard that was applied before the states had that authority.

Ho-Chunk Nation also cites Lac du Flambeau Band of Lake Superior Chippewa Indians v. State of Wisconsin, 770 F. Supp. 480 (W.D. Wis. 1991), for the proposition that Wisconsin is a "regulatory" state, but Lac du Flambeau is not helpful because it was about class III gaming, not class II. Thus, by relying on that case, the Nation is asking the court to eliminate any distinction between class II and class III games. If anything, the 1991 decision undermines that position because the decision emphasizes that "[t]he essential feature of the [Indian Gaming Regulatory] Act is the tribal-state compact process." Id. at 481. In this case, it is Ho-Chunk Nation, not the state, that is attempting to do an end-run around the compact process.

In arguing that the state must allow the Nation to offer poker at the Madison gaming facility because the state allows *some* forms of gaming both at that facility and elsewhere, the state relies entirely on the "regulatory/prohibitory" distinction made in cases such as Cabazon and Lac du Flambeau. Because I have concluded that Cabazon and Lac du Flambeau are not instructive, that argument cannot prevail.

C. "Explicitly Authorized" or "Not Explicitly Prohibited" by "the Laws of the State"

Art. IV, § 24(1) of the Wisconsin Constitution states, "Except as provided in this section, the legislature may not authorize gambling in any form." Neither poker generally nor electronic poker in particular is listed in the provision as something the legislature may

authorize. As a result, the state says, the electronic poker at Ho-Chunk Nation's Madison gaming facility is "explicitly prohibited" by the Wisconsin Constitution.

In response, the Nation raises several arguments. First, "the 'explicit language [in art. IV, § 24] precludes the legislature from authorizing any gambling not within the exceptions in § 24, [but] it 'explicitly prohibits' only one thing: the State conducting poker or simulated poker as part of the lottery." Dft.'s Br., dkt. #33, at 20. Ho-Chunk Nation cites art. IV, § 24(6)(c), which allows the legislature to create a lottery, but excludes poker as a game that may be part of the lottery.

The point the Nation is trying to make is not immediately clear. To the extent it means to argue that poker is "not explicitly prohibited" by the state constitution because it is not listed individually as a prohibited game, I disagree. The state constitution "explicitly prohibits" *all* gambling unless it falls within a listed exception. Ho-Chunk Nation cites no authority for the view that a state must "itemize" all the games it prohibits.

The Nation may be arguing that there is some significance to the way that art. IV, § 24 is worded. It compares the phrase "the legislature may not authorize gambling" in art. IV, § 24 with the Idaho Constitution, which states that "[g]ambling is . . . strictly prohibited" before listing a number of exceptions. Idaho Const. art. III, § 20. Ho-Chunk Nation seems to believe that there is something more permissive about the language in the Wisconsin Constitution, but it never explains the practical difference between prohibiting the legislature from authorizing an activity and prohibiting the activity directly. Because all gambling is prohibited in Wisconsin without an act of the legislature authorizing it, I see no

11

relevant difference.

Alternatively, Ho-Chunk Nation says that electronic poker is "authorized" under Wisconsin law because compacts with the state allow tribes to offer poker games in some contexts.  E.g., Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶ 82, 295 Wis. 2d 1, 719 N.W.2d 408 (because compacts were entered into before amendment to art. IV, § 24 was enacted and compacts anticipated that tribe and state could "allow new games should the parties agree to amend the scope of gaming," state constitution did not prohibit governor from agreeing with tribe to expand scope of gaming as anticipated by compacts).  The National Indian Gaming Commission relied on a similar argument in concluding in an opinion that electronic poker is "explicitly authorized" or "not explicitly prohibited" by state law.  Dkt. #17-7.

There are two problems with this argument.  First, gaming compacts are meant to address *class III* gaming, not class II.  25 U.S.C. § 2710(d); Lac du Flambeau, 770 F. Supp. at 484.  If permission to engage in gaming under a compact qualified as "explici[t] authoriz[ation]" under § 2703, it would significantly blur the distinction between class II and class III gaming by making it impossible for the state to allow gaming for a limited purpose in the context of a compact.  In other words, once the state allowed class III gaming through a compact, that game necessarily would become a class II game that the state could not prohibit in other contexts.  If that were the law, it is likely that the state would be much less willing to negotiate compacts.

Second, under § 2703(7), a game qualifies as a class II game if it is authorized or not

12

prohibited "by the laws of the State." Ho-Chunk Nation cites no authority for the proposition that a compact qualifies as a state law for the purpose of § 2703(7).

### D. Lack of Enforcement

Ho-Chunk Nation devotes much of its briefs to arguing that poker is being played in Wisconsin in various contexts, such as in taverns and at charity events. The state disputes many of these allegations, but even if they are true, they cannot carry the day for the Nation. The question whether the state is failing to fully enforce its own laws against playing poker might be relevant in determining whether poker is a game subject to compact negotiations, Lac du Flambeau, 770 F. Supp. at 485, or it might be relevant to determining whether a game is "played at any location in the State" under § 2703(7)(A)(ii). However, Ho-Chunk Nation does not explain how a lack of enforcement is relevant to the question whether poker is prohibited or authorized "by the laws of the State." On its face, § 2703(7) does not permit an inquiry into enforcement practices.

Many laws suffer from some amount of underenforcement, but that does not mean that they are no longer "laws." I agree with the state that Ho-Chunk Nation has proposed an unworkable standard because it would require courts to determine the particular degree of enforcement or underenforcement that would qualify as "prohibiting" or "authorizing" a game. Particularly because there is no basis in the statutory text for making that determination, I decline to adopt that interpretation of the statute.

In sum, I conclude that the electronic poker Ho-Chunk Nation is offering at the

Madison gaming facility qualifies as a "class III" game under the Indian Gaming Regulatory Act.  Because it is undisputed that the compact between the parties prohibits class III games under the circumstances of this case, I am granting the state's motion for summary judgment and enjoining Ho-Chunk Nation from offering electronic poker at the Madison gaming facility.


ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by plaintiff state of Wisconsin, dkt. #16, is GRANTED, and the motion for summary judgment filed by defendant Ho-Chunk Nation, dkt. #23, is DENIED.

2.  Ho-Chunk Nation is ENJOINED from offering electronic poker at Ho-Chunk Gaming Madison in the absence of a compact between the parties that permits electronic poker at the Madison facility.  The injunction shall take effect 30 days after the conclusion of any appeals filed by Ho-Chunk Nation or 30 days after the expiration of Ho-Chunk Nation's deadline for filing an appeal, whichever is later.

3. The clerk of court is directed to enter judgment in favor of the state and close this case.

Entered this 12th day of June, 2014.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge